## Richmond

JAMES MOUSER v. MILTON P. GRIFFITH.

January 21, 1957.

Record No. 4600.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*E. L. Ryan, Jr.* (*White, Ryan & Reynolds,* on brief), for the plaintiff in error.

*Herbert K. Bangel* (*Bangel, Bangel & Bangel,* on brief), for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Milton P. Griffith, plaintiff in the trial court, obtained a verdict and judgment against James Mouser for $17,000.00 in an action to recover damages for personal injuries sustained when struck by a taxicab owned by Mouser and operated by an employee, Junius R. Britt. Defendant appeals.

The court's action in overruling defendant's motions to strike the evidence and to set aside the verdict raises the only question presented, namely, is the evidence sufficient to sustain the verdict?

The uncontradicted evidence is that the accident occurred between 8:30 and 9 P. M. on April 17, 1955, when the plaintiff, Griffith, a pedestrian, was attempting to cross First Street at or near its intersection with Henry Street in Portsmouth, Virginia. First Street, which is approximately 30 feet wide, extends north from a dead end at the navy yard. Railroad tracks extend down its center. Henry Street does not cross First Street, but extends west from it and is one block north from the entrance to the navy yard.

Defendant states his position thus: "The sole question in this case is whether or not plaintiff was guilty of contributory negligence as a matter of law."

The testimony tending to show the proximate cause of the accident is in sharp conflict. A successful litigant in the lower court is entitled to have the evidence and all reasonable inferences therefrom considered in the light most favorable to him. So regarding the evidence, it may be summarized as follows:

Plaintiff, a man 56 years of age, whose right ankle had been broken some time prior to the accident, intended to walk from the east side of First Street at its intersection with Henry Street to the west side, in the area that would have been the prolongation of the Henry Street sidewalk. Before stepping into the street he looked in both directions for approaching vehicles. He saw the headlights of a taxicab a block away to his left. Just before reaching the center of the street he looked again and saw the headlights approximately 100 feet to his left. As he stepped over the first rail of the railroad track he again saw the lights of the taxicab approximately 30 feet away, approaching rapidly. He tried to accelerate his speed and get out of the way, but was struck by the left front of the cab as he was crossing the far, or the western, rail of the railroad track and carried a distance estimated to be from 18 to 40 feet from the intersection, which was well lighted.

According to this testimony, the point of collision was several feet to the left of the center of First Street and in the southern traffic lane. Plaintiff was in plain view of the operator of the taxicab and could have been seen and the accident avoided if the operator had exercised proper care.

The substance of the testimony of defendant's driver is that he was traveling north in the northbound lane close to parked cars on his

right at between 15 and 18 miles an hour; that after he had gotten from 100 to 150 feet north of the intersection of First and Henry Streets plaintiff "lunged" out from between two parked cars into the right side of his cab; that he stopped immediately, and for the purpose of aiding him backed his cab a few feet to the side of the plaintiff lying in the street.

Police officers testified that they arrived on the scene a few minutes after the accident and saw plaintiff lying in the street parallel to the second car parked on the east side of First Street. They noticed a small dent on the right hand side of the hood of the taxicab which indicated that it had been recently made. They smelled whiskey on plaintiff's breath and his clothes were saturated with whiskey, which evidently came from a bottle in plaintiff's pocket broken by the impact. No one testified that plaintiff was drunk and he said that he had taken two drinks that day, one in the morning and the other some time before the accident.

The question is not how this Court, as a trier of fact, would have decided the case, but the question is whether there is sufficient credible evidence to support the verdict of the jury. From a brief statement of the facts, the evidence is sufficient to support either the theory of plaintiff or the theory of defendant. We cannot say that the testimony of the plaintiff is so manifestly untrue that reasonable men ought not to believe it.

This brings the case within the influence of numerous decisions wherein we have held that whether a plaintiff exercises proper care for his own safety or was guilty of contributory negligence barring his recovery was a question for the jury. *Smith* v. *Carpenter*, 198 Va. 91, 92 S. E. 2d 275; *Danner* v. *Cunningham*, 194 Va. 142, 72 S. E. 2d 354; *Burke* v. *Scott*, 192 Va. 16, 63 S. E. 2d 740; *Reese* v. *Snelson*, 192 Va. 479, 65 S. E. 2d 547; *Bethea* v. *Virginia Electric & Power Co.*, 183 Va. 873, 33 S. E. 2d 651.

The judgment of the trial court is

*Affirmed.*