## Richmond

CLARENCE E. SMITH, ETC. v. NEW DIXIE LINES, INCORPORATED, ET AL.

November 30, 1959.

Record No. 4972.

Present, All the Justices.

The opinion states the case.

*Gordon P. Williams* (*Thomas A. Williams, Jr.; Williams, Williams, Williams & Williams*, on brief), for the plaintiff in error.

*Richard L. Williams* (*Edward R. Parker; Bremner, Parker, Neal, Harris & Williams*, on brief), for New Dixie Lines, Inc., defendant in error.

*Ernest G. Garrett, Jr.* and *A. C. Epps* (*May, Garrett, Miller & Newman; Christian, Barton, Parker & Boyd*, on brief), for John W. Hennessey, Trustee, Etc., and Francis C. Proctor.

I'ANSON, J., delivered the opinion of the court.

Clarence E. Smith, hereinafter referred to as the plaintiff, filed a motion for judgment against New Dixie Lines, Incorporated, Penn-Dixie Lines, Incorporated, and Francis C. Proctor, operator of the Penn-Dixie tractor-trailer, for personal injuries, alleging that the New Dixie and Penn-Dixie tractor-trailers were so negligently operated as to cause a collision between the New Dixie tractor-trailer and an automobile in which he was riding as a passenger.

At the conclusion of all the plaintiff's evidence the trial court sustained a motion to strike his evidence and, pursuant to Rule 3:20 of the Rules of this Court, entered summary judgment in favor of all the defendants. To this action of the court we granted a writ of error.

The only assignments of error to which we need direct our attention are: (1) The court erred in striking the plaintiff's evidence and entering summary judgment; and (2) the court erred in admitting improper evidence offered by the defendant.

The plaintiff's evidence discloses that the collision occurred at about 8:30 p.m. on November 24, 1955, on U.S. highway 360, a two-lane highway, which runs generally east and west. The plaintiff was sitting on the right side of the front seat of an automobile driven

by Marvin K. Pamplin. Cleveland Wood was sitting in the middle between the driver and the plaintiff. The automobile was proceeding eastwardly toward Richmond at a lawful speed of between 50 and 55 miles per hour and as it approached the crest of a grade Pamplin and Wood saw the bright headlights of the New Dixie tractor-trailer coming up the grade in the westbound lane. Both drivers dimmed their headlights. Upon arriving at the crest of the grade Pamplin and Wood saw another set of bright headlights from a second vehicle coming around the New Dixie tractor-trailer in their lane of travel, and at that moment, when the vehicles were "very close," the headlights on the New Dixie tractor-trailer were flashed on high beam. Pamplin applied his brakes, pulled his car to the right and, because of loose gravel on the shoulder, the car went into a skid of 120 feet, curving back across the road into the westbound lane, and was struck broadside by the westbound New Dixie tractor-trailer, knocking the car forty feet west of the point of impact. The second vehicle stopped within seconds of the crash behind the New Dixie tractor-trailer but did not remain at the scene. The only other vehicle in the vicinity of the three involved was a third truck, owned by New Dixie, following some distance behind the Penn-Dixie tractor trailer.

A state trooper investigated the accident and quoted Pamplin as saying that when he saw two sets of headlights he applied his brakes and remembers nothing more.

On cross-examination Pamplin testified that when he came over the crest of the grade and first saw the New Dixie tractor-trailer it was "maybe 300 feet away;" that the New Dixie tractor-trailer was 30 to 50 feet away from him when he saw the bright headlights of the second vehicle coming alongside of and attempting to pass the New Dixie tractor-trailer in his lane of travel at a speed of 50 or more miles per hour, and simultaneously the driver of the New Dixie tractor-trailer flashed his bright lights back on; that he was blinded by the bright lights of both vehicles; that he applied his brakes and pulled his car to the right; and that he did not know what happened after that until he was in the hospital.

Wood, the other passenger in the car with the plaintiff, testified on cross-examination that he could not estimate the distance between the New Dixie tractor-trailer and Pamplin's car when the second vehicle attempted to pass the New Dixie tractor-trailer; that the headlights of both vehicles were on bright; and that Pamplin applied his brakes and pulled to the right.

The evidence of Proctor, who was called as an adverse witness, and Spence, driver of the third truck, a New Dixie truck, who was called out of order as a witness for the defendants, shows that the vehicle following immediately behind the New Dixie tractor-trailer, and referred to by the plaintiff's witnesses as the second vehicle, was the Penn-Dixie tractor-trailer driven by Proctor.

The plaintiff did not testify as he was unconscious for a long time after the accident and had no memory of its happening. A guardian was appointed for him and substituted as plaintiff.

John W. Hennessey, trustee in bankruptcy for Penn-Dixie Lines, Inc., was substituted as a party defendant for Penn-Dixie Lines, Inc.

The plaintiff contends that the trial court erred in striking the plaintiff's evidence because all the defendants were guilty of negligence in violating § 46-212, and § 46-279,[1] Code of 1950, as amended; that Penn-Dixie and Proctor were negligent in violating an additional statutory provision, § 46-228,[2] Code of 1950, and that it was for the jury to determine whether such negligence was a proximate cause of the accident.

Sections 46-212 and 46-279 read in part as follows:

"*§ 46-212. Speed limits and other driving regulations.*—Any person who shall:

\*      \*      \*      \*      \*      \*      \*

"(10) While operating a vehicle upon any highway, fail or refuse to control the lights of such vehicle by shifting, depressing, tilting or dimming the headlight beams thereof so as not to project into the eyes of the driver of any oncoming vehicle a glaring or dazzling light;

\*      \*      \*      \*      \*      \*      \*

"Shall be guilty of a misdemeanor and upon conviction shall be punished in accordance with the provisions of § 46-18."

"*§ 46-279. When dimming headlights, etc., required.*— \* \* \* Whenever a vehicle approaches an oncoming vehicle within five hundred feet it shall be the duty of the operator of such vehicle to use one of the lowermost distributions of light so aimed that glaring rays are not projected into the eyes of the oncoming driver or to dim the headlamps if the vehicle has single beam lamps."

---

[1] Title 46 was repealed by Acts of Assembly, 1958, c. 541, p. 685, and a new Title 46.1 was enacted, this section being codified as § 46.1-272, Code of 1950, 1958 Replacement Volume.

[2] Now § 46.1-212, Code of 1950, 1958 Replacement Volume.

Section 46-228 reads as follows:

"*§ 46-228. Limitations on privileges of overtaking and passing.*— The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety and such overtaking vehicle shall give way to an oncoming vehicle."

It is the established rule in Virginia that "In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason." *Green* v. *Smith*, 153 Va. 675, 680, 151 S. E. 282, 283, *Pike* v. *Eubank*, 197 Va. 692, 698, 90 S. E. 821, 825.

The plaintiff's evidence shows that the driver of the New Dixie tractor-trailer was guilty of negligence in violating § 46-212 and § 46-279, Code of 1950, as amended, and that Penn-Dixie and Proctor were negligent in violating § 46-212, § 46-279, as amended, and § 46-228, Code of 1950.

"The violation of a statute constitutes negligence *per se*, and if such negligence is a proximate or efficiently contributing cause of an injury, it will support a recovery for damages for such injury. The question of whether such negligence is a proximate or efficiently contributing cause of an injury is usually a question of fact for a jury to determine" (*White* v. *Gore*, 201 Va. 239, 242, 110 S. E. 2d 228, 231); and if reasonable men may differ in their conclusions as to whether such negligence was a proximate or efficiently contributing cause of the accident, then the jury is the proper tribunal to decide the issue. *Smith* v. *Carpenter*, 198 Va. 91, 92, 92 S. E. 2d 275, 277; *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. 2d 850, 853.

All the defendants argue that the evidence given by the plaintiff's witnesses as to distances between the car and the defendants' vehicles when the Penn-Dixie tractor-trailer started to pass the New Dixie tractor-trailer and entered in the eastbound lane with its bright lights burning, and when the New Dixie driver flashed on his bright

lights, was incredible. They say that it is mathematically impossible for the accident to have occurred in the manner related by Pamplin. They rely on the rule laid down in *Burch* v. *Grace Street Building Corporation*, 168 Va. 329, 339, 340, 191 S. E. 672, 676, 677, and approved by this court in *Williams* v. *Service Incorporated*, 199 Va. 326, 334, 99 S. E. 2d 648, 654, "that courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible."

We again approve that rule, but it is not applicable to the facts of this case. The evidence shows that the driver of the automobile was suddenly blinded by the headlights from two vehicles he was meeting, one of them in his lane of travel. Lights glaring in the eyes of the driver of a car from a vehicle which he is meeting tend to give the impression of close proximity and create a situation of confusion. This is particularly true when vehicles are traveling at a speed of 50 miles or more per hour. All the occupants of the car were injured and it can hardly be expected that they could remember exact distances months after an accident which occurred in a fleeting moment, when time and distances are not ordinarily recorded with precision and accuracy. At best, they are only estimates in the nature of opinion and best judgment.

The failure of the plaintiff's witnesses to give accurate distances between Pamplin's car and the tractor-trailers, at the exact moment when the Penn-Dixie vehicle attempted to pass and the bright lights appeared on the New Dixie vehicle, did not make their testimony incredible as a matter of law. It was only a circumstance to be considered by the jury in weighing their testimony. *Sink* v. *Masterson*, 191 Va. 618, 623, 61 S. E. 2d 863, 865; *Hopkins* v. *Gromovsky*, 198 Va. 389, 392, 94 S. E. 2d 190, 192.

Reasonable men may differ in their conclusions as to whether the negligence of the defendants was a proximate or efficiently contributing cause of the accident; and since the plaintiff's evidence as to distances and positions of the tractor-trailers on the highway in relation to the automobile in which he was a passenger was not incredible as a matter of law, a case was presented for the jury to determine under proper instructions. Thus the court erred in striking the plaintiff's evidence and entering summary judgment in favor of the defendants.

Since this case will have to be reversed and remanded for a new trial, we will deal with the plaintiff's second assignment of error.

The plaintiff contends that it was error for the trial court to allow the defendants to introduce evidence relative to Pamplin's conviction of reckless driving growing out of this accident.

The evidence shows that Pamplin was arrested and charged with reckless driving. He executed a bond for his appearance on the return day of the warrant, at which time he did not appear. In his absence he was convicted of the offense and his bond was forfeited. This court has held that such action on the part of a motorist is in itself a plea of guilty to the offense charged (*Lamb* v. *Butler*, 198 Va. 509, 520, 95 S. E. 2d 239, 246) but the record of Pamplin's plea and conviction is not admissible as evidence in this case. *Honaker* v. *Howe*, 19 Gratt. (60 Va.) 50, 55, 56. Furthermore, the plaintiff was not a party to the criminal prosecution against Pamplin and he is not bound by its result. It was error to admit in evidence the testimony and record of Pamplin's conviction.

In Virginia the general rule is that a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered, or constitute a bar to a subsequent civil action based on the offense of which the party stands convicted or acquitted, and such judgment of conviction or acquittal is not admissible in evidence. *Honaker* v. *Howe*, *supra*, [19 Gratt. (60 Va.) at pp. 55, 56]; *Supervisors* v. *N. & W. Ry. Co.*, 119 Va. 763, 785, 786, 787, 91 S. E. 124, 132; *Aetna Casualty & Surety Co.* v. *Anderson*, 200 Va. 385, 388, 389, 105 S. E. 2d 869, 872. The reason for the rule is that the parties in a criminal proceeding are not the same as those in a civil proceeding and there is a consequent lack of mutuality.

The general rule, however, was not followed under the facts presented in *Eagle, Star, Etc., Ins. Co.* v. *Heller*, 149 Va. 82, 106, 140 S. E. 314, 321.

In that case Heller recovered a judgment under a fire insurance policy covering the very property he had been convicted of burning. The defendant company assigned as error the rejection by the trial court of its pleas of *res judicata* and *estoppel* and the exclusion of evidence of the plaintiff's conviction of arson. This court, in reversing and entering judgment for the defendant, held that the general rule that records in a criminal case are not admissible in evidence in civil suits involving substantially the same issues is subject to an exception where a plaintiff seeks to recover in an action on an insurance policy

covering property which he has wilfully burned with intent to defraud the insurer.

This court applied a logical exception to the general rule in that case, but there is no sound reason for applying an exception to the rule under the facts of this case.

For the reasons given, the judgment of the lower court is reversed and the case remanded for a new trial.

*Reversed and remanded.*